**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | |
| **ex rel. BYRON STRAKUSEK, Relator,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 19 C 7247** |
| | ) | |
| **OMNICARE, INC. and CVS HEALTH** | ) | **Judge Rebecca R. Pallmeyer** |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

In this action brought under the Illinois False Claims Act, Plaintiff-Relator Byron Strakusek ("Relator") contends that Defendants Omnicare, Inc. ("Omnicare") and its parent, CVS Health Corp. ("CVS"), caused the submission of materially false claims to Medicaid—specifically, claims for prescription drugs dispensed without a valid prescription. Defendants removed the case to this court on the basis of diversity jurisdiction, and now move to dismiss it. They argue that Plaintiff has not adequately pleaded facts supporting their direct involvement in the alleged wrongdoing, and that Plaintiff's complaint, a copy of one he filed in this federal court almost seven years ago, is barred by *res judicata*. As explained here, the court agrees. The motion is granted.

Relator commenced this *qui tam* action under the Illinois False Claims Act ("IFCA"), 740 ILCS 175/1–8. Like the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, the IFCA allows private citizens acting as whistleblowers to sue on behalf of the State of Illinois to recover damages for the submission of materially false claims to government programs. 740 ILCS 175/3, 4(b)(1). Without describing the nature of his job, Relator alleges that he worked at Omnicare between July 2011 and December 2013, when the alleged misconduct occurred. (Compl. ¶ 6, Ex. 1 to Defs.' Notice of Removal [1-1].) Specifically, Strakusek alleges that Defendants Omnicare and its parent, CVS, caused the submission of false claims to the Illinois Medical Assistance Program ("Illinois Medicaid") for controlled substances that were dispensed without a

valid prescription.  (Compl. ¶¶ 1–2.)  The Illinois Controlled Substances Act ("ICSA"), 720 ILCS 570/100–603, prohibits pharmacists and pharmacies from dispensing a prescription unless the prescriber has affixed his or her manual signature to the prescription.  720 ILCS 570/312(i), (i-5); *see also* ILL. ADMIN. CODE tit. 77, § 3100.390(b).  Relator claims that Defendants received and filled more than 2,000 prescriptions using pre-signed or photocopied forms in violation of the ICSA.  (Compl. ¶¶ 18, 20.)  This practice, Strakusek alleges, caused various long-term care facilities to submit false claims and false certifications to Illinois Medicaid in violation of the IFCA. (Compl. ¶¶ 28–30.)

Relator filed this lawsuit in state court on March 31, 2017.  The Complaint was held under seal while the State of Illinois investigated Relator's claims.  *See* 740 ILCS 175/4(a), (b).  On April 15, 2019, the State declined to intervene in the action.  (State of Illinois' Notice of Declination of Intervention, Ex. 2 to Defs.' Notice of Removal.)[1]  The Illinois court then ordered that the Complaint be unsealed.  (Order, Apr. 15, 2019, Ex. 3 to Defs.' Notice of Removal.)  On October 7, 2019, Relator served process on Defendants.  (Service of Process Transmittal, Ex. 1 to Defs.' Notice of Removal.)  Defendants timely removed the action to federal court on the basis of diversity and federal question jurisdiction.  (Defs.' Notice of Removal ¶¶ 1–2.)[2]  Defendants now

---

[1]     The text of 740 ILCS 175/4(b)(1) provides that, when the State declines to intervene, a *qui tam* action "may be dismissed only if the court and the [State] Attorney General give written consent to the dismissal and their reasons for consenting."  Citing this provision in its notice declining to intervene, the State requested that, "should either the Relator or the Defendants propose that this action be dismissed, settled, or otherwise discontinued, [the Circuit Court of Kane County] solicit the written consent of the State of Illinois before ruling or granting its approval."  Relator has not argued that this court must obtain the State Attorney General's consent before dismissing this case, but even if he had, that argument would fail.  As this court made clear in another *qui tam* case, "Section 175/4(b)(1) only applies to voluntary dismissals or settlements initiated by the parties, not to court-ordered involuntary dismissals."  *United States ex rel. Stop Illinois Mktg. Fraud, LLC v. Addus Homecare Corp.*, No. 13 C 9059, 2018 WL 1411124, at *8 (N.D. Ill. Mar. 21, 2018) (citing *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 n.5 (7th Cir. 2009) (reaching the same conclusion in a federal FCA action)).

[2]     Defendants assert that federal question jurisdiction supports removal because the Complaint implicates a prior federal court judgment that may have preclusive effect.  (Defs.' Notice

move to dismiss Relator's complaint, arguing that *res judicata* bars this case, that the IFCA's public disclosure bar applies, and that the Complaint fails to state a claim. (Mot. to Dismiss [19]; Defs.' Mem. in Support of Mot. to Dismiss [20] (hereinafter "Defs.' Mem.").) For the following reasons, Defendants' motion is granted.

## BACKGROUND

Relator's allegations, deemed true at this stage, are summarized below. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). A court may also take judicial notice of matters in the public record, including judicial proceedings, because their accuracy cannot reasonably be questioned. *See* FED. R. EVID. 201(b); *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010) (collecting cases and observing that courts may "take judicial notice of prior proceedings in a case involving the same litigant"). Because one basis for Defendants' motion to dismiss is *res judicata*, the court takes judicial notice of pleadings and orders from a previous lawsuit that Relator filed against Omnicare in this court: *United States ex rel. Strakusek v. Omnicare, Inc.*, No. 14-cv-2808 (N.D. Ill.) (Castillo, J.) (hereinafter "*Strakusek I*").

**A.    *Strakusek I***

In 2014, Relator filed a complaint under the federal FCA and the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.*, making allegations similar to those at issue here. (Compl., *United States ex rel. Strakusek v. Omnicare, Inc.*, No. 14-cv-2808 (N.D. Ill. Apr. 18, 2014); Am. Compl. (Apr. 25, 2014), Ex. 1 to Defs.' Mem. [20-1] (hereinafter "*Strakusek I* Compl.").) After investigating the allegations, the United States concluded that further prosecution of the case was

_____

of Removal ¶ 2 (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911–12 (7th Cir. 1993); *Franchise Tax Bd. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981)); *see also* Defs.' Notice of Removal ¶ 27 (same).) Without endorsing that theory, the court acknowledges that diversity jurisdiction provides an independent basis for this court's exercise of jurisdiction.

not in the Government's interest. (Mem. in Support of U.S. Mot. to Dismiss, Ex. 2 to Defs.' Mem. (hereinafter "U.S. Mot.") [20-2] at 1.) The United States estimated that the cost of assisting Relator with discovery would outweigh any potential loss to the Government—a loss it calculated at approximately $167,200. (*Id.* at 9–10.) Accordingly, the United States declined to intervene and moved to dismiss as an exercise of its prosecutorial discretion under 31 U.S.C. § 3730(c)(2)(A), which provides that "the Government may dismiss [a *qui tam*] action notwithstanding the objections of the person initiating the action" so long as the relator receives notice and an opportunity for a hearing. Relator received notice of the Government's motion but failed to submit a response by the agreed-upon deadline. (*See* Am. Order, Ex. 3 to Defs.' Mem. [20-3].) On March 24, 2016, the District Court for the Northern District of Illinois granted the United States' motion and dismissed the complaint "with prejudice as to Relator." (*Id.*) Pursuant to the dismissal order, the case was later unsealed. (Order of May 13, 2016, Ex. 4 to Defs.' Mem. [20-4].)

**B.  *Strakusek II***

More than a year after his federal case was dismissed, Relator filed the instant lawsuit ("*Strakusek II*") under seal in the Circuit Court of Kane County, Illinois on March 31, 2017. Relator alleges that Defendants' "management imposed performance standards . . . requir[ing] . . . pharmacists to review fifty-five (55) prescriptions for controlled substances per hour." (Compl. ¶ 17.) Relator further alleges that this policy "had the effect of causing . . . pharmacists to dispense thousands of invalid prescriptions for controlled substances." (*Id.*) These prescriptions were invalid, according to Strakusek, because the prescriber's signature was either "not manually affixed" to the prescription or "photocopied and reused numerous times." (*Id.* ¶ 18.)

A brief explanation of the Illinois Medicaid reimbursement scheme is helpful to understand the basis for Strakusek's theory of liability. First, Defendants provide pharmaceutical services to long-term care facilities pursuant to a contract with the State of Illinois's Medicaid licensure program. (*Id.* ¶ 22.) In exchange for providing pharmaceuticals to Illinois Medicaid patients, the

4

Illinois Department of Public Aid reimburses Defendants for their costs plus a fixed dispensing fee. (*Id.*) Physicians working at long-term care facilities write prescription orders for patients; nurses then present the orders to data-entry personnel employed by Defendants; pharmacists at Defendants' pharmacies receive and fill the orders; and orders are finally shipped to long-term care facilities where patients reside. (*Id.* ¶ 23–24.) Each day, Defendants' pharmacies electronically submit their Medicaid claims to the Illinois Department of Public Aid along with their Medicaid provider identification number, which certifies that Defendants are complying with federal and state regulations. (*Id.* ¶ 25.)

Relator alleges that, between July 2011 and December 2013, Defendants "knowingly caused to be made false or fraudulent prescription[ ] reports that falsely represented that said drugs were dispensed pursuant to a valid prescription." (*Id.* ¶ 27.) Thus, Relator alleges, Defendants "knowingly caused various long[-]term care facilities to submit false claims to Illinois Medicaid for controlled substances including Schedule II drugs that were dispensed without valid prescriptions." (*Id.* ¶ 28.) Defendants' conduct allegedly caused "long-term care facilities and pharmacies to submit false certifications . . . on over 2000 occasions where controlled substances were dispensed" based on the invalid prescriptions. (*Id.* ¶ 30.)

Relator points to four examples of patients who received medication without a manually signed prescription. (Compl. ¶¶ 32–44, 45–56, 57–70, 71–82.) In each example, he asserts that it is "plainly obvious" that the prescription forms were "pre-signed and photocopied" (*id.* ¶¶ 34, 47, 61, 73), sometimes "numerous times." (*Id.* ¶¶ 34, 47.) He also attaches a "summary of controlled substances," detailing over 2,000 prescriptions that were illegally dispensed. (*Id.* ¶ 20 & Ex. A.) According to Relator, "[n]early each and every nursing home and/or long[-]term care facilit[y]" in the summary chart accepts Illinois Medicaid [reimbursement]." (*Id.* ¶ 26.)

Defendants read Strakusek's factual allegations as "a copy-and-paste of his allegations" from *Strakusek I.* (Defs.' Mem. at 3.) Both complaints alleged violations of the ICSA at an

5

Omnicare pharmacy, located at 2313 South Mt. Prospect Road, Des Plaines, Illinois, between July 2011 and December 2013. *Compare* Compl. ¶¶ 3, 26, *with Strakusek I* Compl. ¶¶ 5, 62. The four patient examples are identical (*compare* Compl. ¶¶ 32–82, *with Strakusek I* Compl. ¶¶ 72–122),[3] as is the summary chart of alleged violations. (*Compare* Compl., Ex. A, *with Strakusek I* Compl., Ex. B.) The only meaningful differences between the allegations of *Strakusek I* and those of *Strakusek II* are (1) Relator has replaced federal FCA claims with IFCA claims (Compl. ¶¶ 86–94), and (2) Relator added CVS as a defendant (*id.* ¶ 7.).

## DISCUSSION

Defendants first argue that this case is barred by *res judicata*. (Defs.' Mem. at 5–7.) In the alternative, they contend that the prior public disclosure bar applies. (Defs.' Mem. at 7–10.) Turning to the merits, they argue that Relator has failed to state a claim on all four counts under FED. R. CIV. P. 12(b)(6). (Defs.' Mem. at 10–18.) Finally, they ask the court to dismiss CVS from this suit. (Defs.' Mem. at 18–19.) The court concludes that dismissal is warranted on all four grounds.

### A.    Res Judicata

The doctrine of *res judicata*, also known as claim preclusion, prevents parties or their privies from relitigating claims that proceeded to final judgment on the merits. Because *Strakusek I* was litigated in federal court, the federal law of *res judicata* applies. *United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 270 (7th Cir. 2017) (citations omitted); *see also* Restatement (Second) of Judgments § 87 (1982)). The doctrine "bars litigating claims which were, or could have been, decided in a prior suit, even if the fresh attempt relies on marginally different theories." *Conner*, 877 F.3d at 271 (citation and internal quotation marks omitted). There are three requirements for *res judicata* to apply: "(1) an identity of the parties in the two suits; (2) a

---

[3]    Defendants have summarized these similarities in a chart. (*See* Defs.' Mem. at 4.) Relator did not dispute the accuracy of this chart in his response brief.

final judgment on the merits in the first; and (3) an identity of the causes of action." *Barr v. Bd. of Trustees of W. Ill. Univ.*, 796 F.3d 837, 840 (7th Cir. 2015) (citation omitted). With respect to the third element (identity of the causes of action), "two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Id.* (citations omitted). The party seeking to invoke *res judicata* bears the burden of proving each element to bar the subsequent action. *Allahar v. Zahora*, 59 F.3d 693, 696 (7th Cir. 1995).

### 1. Identity of the Parties or Their Privies

Defendants argue that the parties in *Strakusek I* and this case—namely, Relator and Omnicare—are identical for purposes of *res judicata*. Relator disagrees, arguing that that the United States was the "real party in interest" in *Strakusek I* because Relator brought his suit under the FCA. (Pl.'s Resp. at 6.) By contrast, the State of Illinois is the "real party in interest" here because this suit invokes the IFCA. (*Id.*) This difference in sovereigns, he contends, defeats the identity-of-parties element of the res judicata doctrine.

This argument has little merit. That Relator brought his FCA suit on behalf of the United States makes no difference because *res judicata* bars a subsequent action "so long as the party against whom the doctrine is asserted was a party to the earlier litigation." *In re Nat'l Indus. Chem. Co.*, 237 B.R. 437, 442 (Bankr. N.D. Ill. 1999) (citing *Dreyfus v. First Nat'l Bank of Chicago*, 424 F.2d 1171, 1175 (7th Cir.1970)); *see also Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 857 (7th Cir. 2001) (addition of new plaintiffs who were not entitled to recovery did not defeat *res judicata* defense against plaintiff who prevailed in earlier litigation). The district court in *Strakusek I* dismissed his complaint "with prejudice *as to Relator*." (Am. Order, Ex. 3 to Defs.' Mem. (emphasis added).) Defendants are now asserting *res judicata* against Relator, *not* the United States. Thus, all that matters for the *res judicata* inquiry is whether Relator was a party to the first action, which he certainly was.

7

Two *qui tam* cases that Defendants have identified underscore this point. (*See* Defs.' Mem. at 7 n.4; Defs.' Reply at 5–6.) In the first case, *Emps.' Ret. Sys. of Hawaii ex rel. Jackson v. Clarion Partners, LLC*, 2017 IL App (1st) 161480, 75 N.E.3d 405 (1st Dist 2017), a relator brought a *qui tam* action on behalf of the State of Illinois under Illinois law, which was dismissed, and then brought a second *qui tam* action on behalf of the State of Hawaii under Hawaii law. *Id.* at 408–09. The court concluded that the "[relator] and [the defendant] were both parties in *Jackson I*, notwithstanding the fact that Jackson sued on behalf of different states in *Jackson I* and *Jackson II*," and therefore *res judicata* barred the second action. *Id.* at 411. In another case, *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346 (5th Cir. 2003), *abrogated on other grounds by Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007), the relator had previously filed a wrongful discharge suit against his employer in state court, alleging that the employer terminated him in retaliation for reporting possible violations of its contract with a federal agency. *Id.* at 349. The relator then brought a *qui tam* action against the employer on the same facts but under the FCA. *Id.* The Fifth Circuit concluded that *res judicata* did not bar the *qui tam* action because, despite the factual similarities between the two cases, the claims themselves were not identical. Significantly here, however, the court found that the identity-of-parties element was satisfied, even though the *qui tam* action was ostensibly on behalf of the relator and the United States. *Id.* at 357–58.

Relator's attempt to distinguish these cases is unpersuasive. Regarding *Jackson*, Relator emphasizes that Jackson brought claims in his individual capacity in conjunction with his first *qui tam* action. (Pl.'s Resp. at 6.) The *qui tam* claim was dismissed, while the individual claims continued to a jury trial, at which Jackson prevailed. *Jackson*, 75 N.E.3d at 408–09. But this doesn't change the relevance of Defendants' analogy to this case—namely, that Jackson involved

8

two *qui tam* actions on behalf of different sovereigns.[4] Relator similarly attempts to distinguish *Laird* by noting that the relator brought a wrongful termination suit before filing his *qui tam* action. (Pl.'s Resp. at 5.) For purposes of the identity-of-parties element, however, it does not matter that the two suits were brought under different statutes so long as the parties (relator and defendant) were the same, and even though the second case involved a nominal plaintiff-sovereign not present in the first case.

### 2. Final Judgment on the Merits

Defendants contend that the dismissal of *Strakusek I* with prejudice (*see* Am. Order, Ex. 3 to Defs.' Mem.) constitutes a final judgment on the merits for purposes of *res judicata*. (Defs.' Mem. at 6 & n.3 (citing *Phillips v. Shannon*, 445 F.2d 460, 462 (7th Cir. 1971) (noting that the "overwhelming weight of authority" holds that dismissal with prejudice constitutes disposition on the merits for purposes of *res judicata*)).) Relator counters that despite the language of the court's order (dismissing the case "with prejudice as to Relator"), there was in fact no final judgment on the merits because the United States sought dismissal of *Strakusek I* under 31 U.S.C. § 3730(c)(2)(A), which provides that "[t]he Government may dismiss the action notwithstanding the objections of the person initiating the action" if the relator is given notice and an opportunity for a hearing. For support, Relator points to an unreported case from the Tenth Circuit, which said (in a different context, as discussed below) that "[d]ismissal under § 3730(c)(2)(A) avoids a decision on the merits and 'does not entail any assumption by the court of substantive law-declaring power.'" *United States ex rel. Wickliffe v. EMC Corp.*, 473 Fed. App'x 849, 852 (10th Cir. 2012).

---

[4] Although *Jackson* is a state court decision, its holding appears to be consistent with the federal law of *res judicata*. *Compare Jackson*, 75 N.E.3d at 410 (identifying the elements of *res judicata* as: "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause[s] of action, and (3) an identity of parties or their privies") (internal quotation marks omitted), *with Barr v. Bd. of Trustees of W. Ill. Univ.*, 796 F.3d 837, 840 (7th Cir. 2015) (enumerating the same elements).

This case therefore presents the question whether a dismissal with prejudice on a § 3730(c)(2)(A) motion has preclusive effect. Neither party has found a case definitively resolving this question, but the court concludes that Defendants have the better argument. First, *Wickliffe*, on which Relator relies, arose in an entirely different posture: the relator there had appealed the district court's grant of the government's § 3730(c)(2)(A) motion to dismiss. 473 Fed. App'x at 850–51. There was no subsequent lawsuit to which *res judicata* might apply, so the court had no need to discuss claim preclusion at all. Instead, the Tenth Circuit's language explains its decision not to address a separate jurisdictional issue (not relevant to this case) before reaching the merits of the relator's appeal. Relator's discussion of *Swift v. United States*, 318 F.3d 250 (D.C. Cir. 2003) is similarly inapposite. (*See* Pl.'s Resp. at 4.) That case held that the government has an essentially "unfettered right to dismiss" *qui tam* actions under § 3730(c)(2)(A), similar to the exercise of prosecutorial discretion, such that judicial review is extremely limited. *Id.* at 252. *Swift*, like *Wickliffe*, has nothing to say about *res judicata*.

Relator is correct that the United States' motion to dismiss in *Strakusek I* did not turn on the merits of his claims. (Pl.'s Resp. at 5.) The government simply argued that any recovery would be too small to justify the cost of litigation. (*See* U.S. Mot. at 10 ("Given that the potential loss to the United States in this case is $167,200, it is simply not in the United States' interest to allow this case to proceed.")) Admittedly, the district court's order granting the motion is silent on whether Relator's claims had merit. (*See* Am. Order, Ex. 3 to Defs.' Mem.) But the district court had no reason to discuss the merits because Relator failed to submit a response to the United States' § 3730(c)(2)(A) motion. (*Id.*) In this respect, granting the motion was similar to ordering dismissal for want of prosecution under FED. R. CIV. P. 41(b).[5] Dismissals under that rule

---

[5] To be sure, an analogy to Rule 41(b) is imperfect because the text provides: "If a plaintiff fails to prosecute . . . *a defendant* may move to dismiss the action." FED. R. CIV. P. 41(b) (emphasis added). In the *qui tam* context, the United States is a fellow *plaintiff* with the power to seek dismissal of a relator's suit.

"operate[ ] as an adjudication on the merits," meaning that they have preclusive effect for purposes of *res judicata*. *See* 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2373 (4th ed. 2020); *LeBeau v. Taco Bell*, 892 F.2d 605, 607 (7th Cir. 1989) ("[D]ismissal for want of prosecution in federal court was with prejudice, and thus a binding adjudication on the merits."). It follows that the dismissal "with prejudice as to Relator" in *Strakusek I* should also have preclusive effect. (Am. Order, Ex. 3 to Defs.' Mem.)

In *United States ex rel. Conner v. Mahajan*, 877 F.3d 264 (7th Cir. 2017), a case cited by neither party, the court concluded that there had been a decision "on the merits" where the prior court merely decided that a relator's motion to intervene—in a case that the Federal Deposit Insurance Corporation brought on similar facts but not under the FCA—was untimely. *Id.* at 271. The district court denied that motion as untimely because the relator "conceded knowing for years about the FDIC's case yet had waited until the eve of settlement to seek intervention." *Id.* at 269. Affirming the application of *res judicata* to relator's subsequent motion in his *qui tam* suit for a share of the FDIC's recovery, the Seventh Circuit reasoned that "the *basis* of the earlier decision is unimportant so long as the claim was decided *on the merits*." *Id.* (emphases in original). "Thus a dismissal of a suit may have preclusive effect even if it did not resolve the central controversy . . . or even regarding issues not raised in the initial suit." *Id.* (citations omitted). If a denial of a motion to intervene as untimely constitutes a decision on the merits, then surely Relator's dismissal with prejudice also satisfies that requirement.

In sum, Relator has not provided a persuasive reason for why a dismissal "with prejudice as to Relator" under § 3730(c)(2)(A) should be treated differently than any other dismissal with prejudice. (Am. Order, Ex. 3 to Defs.' Mem.) By contrast, Defendants have identified numerous cases indicating that an earlier court's failure to address the meat of a claim does not undermine

11

the preclusive effect of dismissal.[6]  The court accordingly concludes that the final judgment on

the merits element of *res judicata* has been satisfied.

### 3.    Identity of the Causes of Action

Defendants argue that the causes of action in this case are essentially the same as those

in *Strakusek I.*  (Defs.' Mem. at 6; Defs.' Reply at 4.)  Relator responds that there is no identify of

claims here; he notes that the prior case did not involve claims under the IFCA, while this case

does not involve claims under the FCA.  (Pl.'s Resp. at 6.)

"Two causes of action are identical if each claim is supported by the same factual

allegations, . . . and the judgment in each case would be based on the same evidence."  *Conner*,

877 F.3d at 271–72 (citations omitted).  Notably, "causes of action may be identical even if the

litigant attempts different substantive or procedural strategies to pursue the same underlying

claim."  *Id.* at 272.  Generally, "it is proper to examine the facts at a sufficient level of specificity to

ensure fair notice to the parties and predictability," but where the two complaints are "virtually

identical," it is unnecessary to "explore the nuances of this standard."  *Tartt v. Nw. Cmty. Hosp.*,

453 F.3d 817, 822 (7th Cir. 2006) (citation and quotation marks omitted).

Defendants are correct that Relator's Complaint relies on the same factual allegations as

*Strakusek I.*  (*See* Defs.' Mem. at 3–5.)  Even though the two complaints bring claims under

different statutes, "the judgment in each case would be based on the same evidence."  *Conner*,

877 F.3d at 272.  Moreover, if *res judicata* did not apply here, the practical ramifications for *qui*

*tam* litigation are significant: "Because the United States and most (if not all) states have false

---

[6]    *See* Defs.' Mem. at 6 n.3 (citing *Phillips v. Shannon*, 445 F.2d 460, 462 (7th Cir.
1971); *Cary v. City of Watseka*, 870 F. Supp. 2d 567, 569 (C.D. Ill. 2012) (holding that
homeowners' voluntary dismissal of their counterclaim in a condemnation action still subjected
the counterclaim to *res judicata* where the remaining claims were ultimately dismissed with
prejudice); *MonoSol, L.L.C. v. Cast Film Tech., Inc.*, No. 02 C 1611, 2002 WL 1822915, at *3
(N.D. Ill. Aug. 7, 2002) (holding that *res judicata* precluded reinstatement of claims that were
dismissed with prejudice pursuant to a settlement)).

claim statutes, [relators] potentially could file upwards of fifty cases, each one at a time." (Defs.' Reply at 6.) In the interest of encouraging parties to bring all possible claims in the same lawsuit, the court concludes that Defendants have established the third and final element of *res judicata*. *See* 18 Wright & Miller, Federal Practice and Procedure § 4408 (3d ed. 2020) ("One major function of claim preclusion is to force a plaintiff to explore all the facts, develop all the theories, and demand all the remedies in the first suit.").

**B.    Prior Public Disclosure**

Next, Defendants argue that this case should be dismissed because it is based on facts that were already publicly disclosed in *Strakusek I*. (Defs.' Mem. at 7–10; Defs.' Reply at 6–9.) Relator claims that this action is not based on a public disclosure, but rather on "information that is within [his] direct and independent knowledge." (Compl. ¶ 4.) If the court concludes the information was publicly disclosed, Relator argues, he should nevertheless be allowed to proceed here because he is the "original source" of the information giving rise to this suit. (Pl.'s Resp. at 8–10.) The court addresses these arguments below.

**1.    Public Disclosure Bar**

Like the federal FCA, the IFCA includes what is known as the public disclosure bar. *Compare* 31 U.S.C. § 3730(e)(4)(A), *with* 740 ILCS 175/4(e)(4)(A). The version of the IFCA in effect in 2011, at the beginning of the alleged scheme, read: "No court shall have jurisdiction over an action under this Section *based upon the public disclosure* of allegations or transactions in a criminal, civil, or administrative hearing . . . unless . . . the person bringing the action is an original source of the information." 740 ILCS 175/4(e)(4)(A) (2010) (emphasis added).[7] The purpose of

---

[7]       The current version of the IFCA, which went into effect in 2012, reads: "The court shall dismiss an action or claim under this Section . . . if *substantially the same allegations* or transactions as alleged in the action or claim *were publicly disclosed* in a criminal, civil, or administrative hearing in which the State or its agent is a party . . . unless . . . the person bringing the action is an original source of the information." 740 ILCS 175/4(e)(4)(A) (2012) (emphases added). The federal FCA was similarly amended in 2010. *Compare id.*, *with* 31

this provision is to ensure that it is true whistleblowers who are able to bring claims under the Act,

rather than opportunists seizing on information that is already publicly available. *See United*

*States ex rel. Feingold v. AdminaStar Federal, Inc.*, 324 F.3d 492, 495 (7th Cir. 2003) ("Where a

public disclosure has occurred, [the government] is already in a position to vindicate society's

interests, and a *qui tam* action would serve no purpose.").

To determine whether the public disclosure bar applies, Illinois courts have interpreted the

IFCA as requiring four inquiries:

> (1) whether the alleged "public disclosure" contains allegations or transactions
> from [a source enumerated in the statute]; (2) whether the alleged disclosure was
> made "public" within the meaning of the False Claims Act; (3) whether the relator's
> complaint is "based upon" the "public disclosure"; and (4) if the answer is positive
> for the prior three inquiries, whether the relator qualifies as an "original source"
> under section 4(e)(4)(B) of the False Claims Act.

*Lyons Twp. ex rel. Kielczynski v. Vill. of Indian Head Park*, 2017 IL App (1st) 161574, ¶ 11, 84

N.E.3d 1118, 1122. Because the IFCA "closely mirrors" the FCA, Illinois courts have looked to

federal case law when analyzing the public disclosure bar. *See People ex rel. Lindblom v. Sears*

*Brands, LLC*, 2019 IL App (1st) 180588, ¶ 29, 143 N.E.3d 101, 112 (citations omitted); *accord*

---

U.S.C. § 3730(e)(4)(A). The Seventh Circuit has held that this subtle change in the FCA's language is substantive and therefore not retroactive. *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 717–18 (7th Cir. 2017) (collecting cases). Hence, the pre-amended version of the federal FCA applies to claims alleging schemes that began before 2010. *Id.* at 717–18.

      Defendants argue that, by analogy, the pre-amended (2010) version of the IFCA should apply in this case. (Defs.' Mem. at 7 n.5). Relator responds that the only alleged public disclosure occurred in May 2016, when the federal court ordered that the *Strakusek I* complaint be unsealed, but he does not otherwise dispute the applicability of the 2010 version. (Pl.'s Resp. at 6 n.2.) In this case, the court concludes that the public disclosure analysis does not turn on which version of the IFCA applies; the substantive changes to the IFCA (and the FCA) concerned a form of public disclosure not at issue here. *See U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 369 (7th Cir. 2016) (noting that "the amended [FCA] . . . explicitly limits the term [administrative hearing] to *federal* administrative hearings—a significant narrowing and clearly a substantive change") (emphasis in original); *compare* 740 ILCS 175/4(e)(4)(A)(i)–(ii) (2010), *with* 740 ILCS 175/4(e)(4)(A)(i)–(ii) (2012) (qualifying "administrative hearing" with "in which the State or its agent is a party" and adding "State" before "hearing").

*U.S. ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F. Supp. 2d 695, 702 n.4 (N.D. Ill. 2012) ("Illinois courts interpreting the state act look to interpretations of the similarly worded federal FCA."). Thus, the court concludes that for his IFCA claims, as in FCA cases, Relator bears the burden of proof on each of the four inquiries identified above. *See United States ex rel. Absher v. Momence Meadows Nursing Center, Inc.*, 764 F.3d 699, 714 (7th Cir. 2014).

The court further concludes that Strakusek cannot meet that burden in this case. First, there was a public disclosure of the alleged wrongdoing from a source enumerated in the IFCA. *See Kielczynski*, 2017 IL App (1st) 161574, ¶ 11, 84 N.E.3d at 1122. Specifically, the unsealed complaint in *Strakusek I* was a disclosure "in the course of a . . . civil . . . hearing." 740 ILCS 175/4(e)(4)(A). That phrase "should be interpreted broadly to include allegations and information disclosed in connection with civil . . . litigation." *United States ex rel. Stinson, Lyons, Gerlin & Bustamente, P.A. v. Prudential Insurance Co.*, 944 F.2d 1149, 1156 (3d Cir. 1991) (internal quotation marks omitted). Factual allegations in an unsealed complaint certainly qualify. *See United States ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104, 111 (1st Cir. 2010) (collecting cases recognizing that "a civil complaint filed in court qualifies as a public disclosure").

Second, the alleged disclosure was made "public" within the meaning of the IFCA. *See Poteet*, 619 F.3d at 110 ("The general rule is that a disclosure is 'public' if it is generally available to the public."). Upon unsealing, a court document becomes a matter of public record. The *Strakusek I* complaint was unsealed in 2016, one year before Relator filed the complaint in this case, meaning that the allegations in *Strakusek I* were public by the time he made the same allegations in *Strakusek II*.

Third, Relator's complaint is "based upon" publicly disclosed allegations. The Seventh Circuit has held that "a relator's FCA complaint is 'based upon' publicly disclosed allegations or transactions when the allegations in the relator's complaint are substantially similar to publicly disclosed allegations." *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 920 (7th Cir.

15

2009).  As discussed above, the complaints in *Strakusek I* and *Strakusek II* contain essentially the same factual allegations.  It follows that Relator's complaint in *Strakusek II* is in fact "based upon" the publicly disclosed allegations in *Strakusek I*.

Relator is correct that he is "not seeking to latch onto information brought forth in prior lawsuits that he discovered in the public domain."  (Pl.'s Resp. at 8.)  But that does not change the fact that numerous federal courts have held that filing a civil complaint amounts to a public disclosure.  *Poteet*, 619 F.3d at 111 (collecting cases).  Relator's attempt to distinguish *Poteet*—on the grounds that someone other than the relator filed the earlier complaint—is unpersuasive. (Pl.'s Resp. at 7–8.)  In *United States ex rel. Lisitza v. Par Pharm. Co.*, No. 06 C 06131, 2017 WL 3531678 (N.D. Ill. Aug. 17, 2017), the court held that a relator's subsequent claims were barred because he was repeating the same allegations he had made in prior complaints.  *Id.* at *12 ("[W]here there had already been three lawsuits [filed by relator] concerning the same drug-switching scheme, and the very same set of allegedly false claims, it cannot seriously be argued that [relator's] complaint is not based on public information, at least in part.")  That is precisely what Relator is attempting to do here.  It does not matter that the prior complaints at issue in *Lisitza* were not filed under seal (Pl.'s Resp. at 8), because the district court ordered that the *Strakusek I* complaint be unsealed after it was dismissed and before the *Strakusek II* complaint was filed.  (Order of May 13, 2016.)

### 2. Original Source

Even if the facts in Relator's Complaint were publicly disclosed in *Strakusek I*, this case is not barred if Relator was the "original source" of the disclosure.  *See Kielczynski*, 2017 IL App (1st) 161574, ¶ 11, 84 N.E.3d at 1122.  The IFCA defines "original source" as "an individual who . . . has knowledge that is independent of and materially adds to the publicly disclosed allegations . . . and who has voluntarily provided the information to the Government before filing

an action under this section." 740 ILCS 175/4(e)(4)(B).[8]  As Defendants note, Relator's claim that he is an original source appears to rest only on the allegation that he worked for Omnicare during the relevant period.  (Defs.' Mem. at 9; Compl. ¶ 6.)  Many of his allegations are based "upon information and belief."  (*See* Compl. ¶¶ 27–30, 40–41, 52–53, 66–67, 78–79, 87–88, 91–93.)  Some district courts have determined that pleading on information and belief "cannot support the requisite direct and independent knowledge to qualify as an original source."  *U.S. ex rel. Schumann v. AstraZeneca PLC*, No. 03-5423, 2012 WL 1071133, at \*4 (E.D. Pa. Mar. 30, 2012); *see also U.S. ex rel. Unite Here v. Cintas Corp.*, No. C 06-2413, 2007 WL 4557788, at \*15 (N.D. Cal. Dec. 21, 2007).

Relator responds that the allegations in the Complaint are "based on information that is within the direct and independent knowledge of the Relator," available to him based upon his employment at Omnicare during the relevant period.  (Compl. ¶¶ 4, 6; Pl.s' Resp. at 9 (citing *State ex rel. Raymer v. Univ. of Chicago Hosps.*, No. 06 L 2742, 2006 WL 2987118 (Ill. Cir. Ct. Oct. 6, 2006).)  He adds that pleading on information and belief is permissible in fraud cases when information asymmetries prevent a plaintiff from having access to evidence in a defendant's possession pre-discovery.  (Pl.'s Resp. at 9 (citing *Goldberg v. Rush Univ. Med. Ctr*, 929 F. Supp. 2d 807, 817 (N.D. Ill. 2013).).  Specifically, a plaintiff may support a claim of fraud on information and belief by alleging that "(1) the facts constituting the fraud are not accessible to the plaintiff

---

[8]     Like 740 ILCS 175/4(e)(4)(A), 740 ILCS175/4(e)(4)(B) was amended in 2012. Unlike Section (4)(e)(4)(A), however, the federal analogue to Section 4(e)(4)(B) has not been interpreted as a substantive change, meaning that the newer definition may apply retroactively. *See Bogina*, 809 F.3d at 368–69 (concluding that the amended version applies "regardless of when a person claiming to be an original source acquired his knowledge"). Relator's Complaint nonetheless quotes from the 2010 version, which defined "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an action under this Section which is based on the information." 740 ILCS 175/4(e)(4)(B) (2010).

and (2) [providing] the grounds for his suspicions." *Goldberg*, 929 F. Supp. 2d at 817 (citation omitted).

The court concludes that Relator's allegations, based on his "direct and independent knowledge" from working at Omnicare, are too thin to support the conclusion that he is an original source. Unlike the relators in *Raymer*, who identified themselves as nurses who had personally witnessed the defendants' fraudulent conduct, Relator has not even identified the role he played at Omnicare, and has offered no other basis for his claimed personal knowledge. *See Raymer*, 2006 WL 2987118 at * 1; *see also United States ex rel. Ziebell v. Fox Valley Workforce Dev. Bd.*, 806 F.3d 946, 953 (7th Cir. 2015) (concluding that former employee was not an original source merely because she had some personal knowledge of her employer). He also has not alleged how Defendants' performance standards, as opposed to sloppiness on the part of prescribing physicians, "caused" pharmacists to dispense thousands of invalid prescriptions. It is true that plaintiffs alleging fraud may sometimes plead on the basis of "information and belief," *Goldberg*, 929 F. Supp. 2d. at 817, but as Defendants correctly point out, *Goldberg* dealt with FED. R. CIV. P. 9(b)'s particularity requirement, not the original source exception. (Defs.' Reply at 9.) Although some evidence in support of a fraud claim may be unavailable to a plaintiff prior to discovery, the way that Relator became aware of the alleged misconduct could not be a secret to him. Because Relator has not shown the basis for his "direct and independent knowledge" of the alleged fraud, the court concludes that he has not alleged status as an original source.

## C. Failure to State a Claim

FED. R. CIV. P. 8(a)(2) requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), a complaint must contain "enough factual matter (taken as true)" to suggest that a plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Courts generally "do not require heightened fact pleading of specifics, but only enough facts to

state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In cases alleging fraud, however, FED. R. CIV. P. 9(b) imposes a heightened pleading standard: "a party must state with particularity the circumstances constituting fraud." The IFCA, like the federal FCA, is an anti-fraud statute, meaning that Rule 9(b)'s particularity requirement applies. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (citation omitted). In order to satisfy this standard, the plaintiff must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) (citation and internal quotation marks omitted).

### 1. Illinois Controlled Substances Act (Count 1)

Defendants contend that Relator has withdrawn his ICSA claim (Count 1, Compl. ¶¶ 83–85), after they pointed out that there is no private right of action under the ICSA. (Defs.' Reply at 9; Defs.' Mem. at 10–12.) It is not clear from Relator's response brief, however, that he has withdrawn it so much as recast it as a predicate for the IFCA claims. (*See* Pl.'s Resp. at 11 ("It is the violation of the [ICSA] which gives rise to the claim under [IFCA]. This is no different from any simple [Racketeer Influenced and Corrupt Organizations Act (RICO)] claim, which often involve[s] Federal criminal statutes, such as wire fraud, to support the RICO claim.") (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985).)

Defendants are correct that no court has recognized a private right of action under the ICSA. (Defs.' Mem. at 12; *see also* U.S. Mot. at 11–12.) Like the federal CSA, the ICSA lacks an express private right of action. (*See* Defs.' Mem. at 12 n.9 (collecting cases finding no private

19

right of action under the federal CSA); U.S. Mot. at 10–11 (same).)  Instead, the ICSA delegates enforcement responsibilities to the Illinois Department of Financial and Professional Regulation and the Illinois State Police.  720 ILCS 570/501(a).  The Illinois Supreme Court has set out a four-part test for determining when the implication of a such a right is appropriate: "(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Metzger v. DaRosa*, 209 Ill. 2d 30, 36, 805 N.E.2d 1165, 1168 (2004) (citations omitted).

If this court were to apply that test to the ICSA, it would likely fail.[9]  First, at least in this case, Relator is not suing as "a member of the class for whose benefit the statute was enacted"; the statute appears aimed at protecting the health of Illinois residents.  Second, Relator's injury (fraud upon the State of Illinois) is not the harm the statute was designed to prevent (abuse of controlled substances).  Third, the statute specifies that enforcement is delegated to two state agencies, 720 ILCS 570/501(a), and private enforcement could disrupt this scheme.  Finally, implying a private right of action is unnecessary to remedy violations of the statute because the state could easily bring its own enforcement action.

Relator's analogy to the RICO context is inapposite.  In *Sedima, S.P.R.L. v. Imrex Co.*, the Supreme Court held that a criminal conviction was not a necessary element to plead a civil cause of action under 18 U.S.C. § 1964(c).  473 U.S. at 493.  *Sedima* does not stand for the proposition

---

[9]     *See also* U.S. Mot. at 12 ("[T]he Illinois Supreme Court has held that no private cause of action exists for alleged violations of the federal Food, Drug and Cosmetic Act, so it appears that relator would be unsuccessful pressing similar claims for damages under either the Illinois or federal CSA in state or federal court.") (citing *Martin by Martin v. Ortho Pharm. Corp.*, 169 Ill. 2d 234, 242, 661 N.E. 2d 352, 356 (Ill. 1996)).

that plaintiffs may bring stand-alone civil claims for alleged violations of a criminal statute. Accordingly, the court dismisses Count 1.

### 2. IFCA (Counts 2 and 3)

To state a claim under the IFCA, Relator "must allege the following essential elements with particularity: (1) the defendant made a statement in order to receive money from the government; (2) the statement was false; and (3) the defendant knew the statement was false." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 840 (7th Cir. 2018) (citations and quotation marks omitted); *see U.S. ex rel. Upton v. Family Health Network, Inc.,* 900 F. Supp. 2d 821, 828 (N.D. Ill. 2012) (concluding that the pleading standard for the IFCA is the same as the FCA). Count 2 of the Complaint alleges that Defendants knowingly caused long-term care facilities to submit false claims by submitting requests for payment of invalid prescriptions to those facilities, in violation of 740 ILCS 175/3(a)(1)(A). (Compl. ¶¶ 87–88.) Count 3 alleges that Defendants knowingly caused long-term care facilities to submit false documents material to the payment of claims, in violation of 740 ILCS 175/3(a)(1)(B). (Compl. ¶¶ 91–93.)

### a. Falsity

Defendants first argue that the Complaint does not establish "falsity" by certification. (Defs.' Mem. at 13 (citing Compl. ¶ 29–30).) False certification under the FCA may be express ("resulting from express misrepresentations") or implied ("resulting from misrepresentation by omission"). *United States ex rel. Lisitza v. Par Pharm. Co.*, 276 F. Supp. 3d 779, 789 (N.D. Ill. 2017). Defendants interpret the Complaint as alleging implied false certification because it states that Defendants "affix[ ] [their] Medicaid provider identification number" when they "batch[ ] [their] Medicaid claims and submit[ ] them electronically to the Illinois Department of Public Aid," thereby "indicat[ing] that . . . [they are] in compliance with all applicable federal and state regulations." (Compl. ¶ 25.) Relator responds that he was alleging express false certification, but that his

21

allegations are in any event sufficient to state a claim of implied false certification. (Pl.'s Resp. at 11–12.)

The court agrees with Defendants that Relator cannot make out an express false certification claim. First and foremost, the identification number identifies Defendants to Illinois Medicaid; it does not by itself convey a false statement. Relator has not alleged with particularity, as Rule 9(b) requires, the basis for his conclusion that the identification number conveys an affirmative misrepresentation that Defendants complied with the ICSA. By contrast, in *United States ex rel. Lusby v. Rolls-Royce Corp.*, the relator alleged that Rolls-Royce's contracts with the United States required it to submit a certificate of compliance with each request for payment. 570 F.3d 849, 853–54 (7th Cir. 2009) (discussing a specific federal acquisition regulation that applied to the contracts). Perhaps there is a statute or regulation providing that affixing a Medicaid provider identification number certifies compliance with the ICSA; perhaps Plaintiff believes Defendants' contract with Illinois Medicaid requires such a certification. He has not made such specific allegations, however, and in their absence the court concludes he has not alleged a claim of express false certification.

Turning to implied false certification, the parties agree on the proper standard: "first, the claim does not merely request payment, but also makes *specific representations* about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations *misleading half-truths.*" *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016) (emphases added). In *Escobar*, the Supreme Court concluded that a mental health facility had made specific representations that its practitioners were qualified (although some allegedly lacked the requisite credentials) simply by including its National Provider Identification number in its claims for reimbursement. 136 S. Ct. at 1997, 2000–01. Here, Relator alleges that the prescription forms that Defendants' pharmacy received were "obvious[ly]" photocopied and/or

pre-signed. (*See, e.g.*, Compl. ¶ 34.) Dispensing prescriptions without a prescriber's manual signature violates 720 ILCS 570/312(i), which states that "[a] prescriber shall not pre-print or cause to be pre-printed a prescription for any controlled substance; nor shall any practitioner issue, fill or cause to be issued or filled, a pre-printed prescription for any controlled substance."[10] Applying the first prong of *Escobar*, affixing Defendants' Medicaid Provider identification number to claims for reimbursement could constitute a "specific representation" that its pharmacists provided services in compliance with the ICSA.

The more difficult question is whether, under the second prong of *Escobar*, Defendants' failure to disclose noncompliance with the ICSA constituted a "misleading half-truth." 136 S. Ct. at 2000. As the Supreme Court has explained, "The False Claims Act is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 136 S. Ct. at 2003 (internal citation and quotation marks omitted). "What matters is not the label the Government attaches to a [legal] requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Id.* at 1996. Lower courts interpreting *Escobar* have concluded that "it is not enough to . . . prove that [a] pharmacy engaged in a practice that violated a federal regulation" because "[v]iolating a federal regulation is not synonymous with filing a false claim." *United States v. Walgreen Co.*, 417 F. Supp. 3d 1068, 1087 (N.D. Ill. 2019) (quoting *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014)); *Lisitza*, 276 F.Supp.3d at 797 (same). Here, Relator has not pleaded facts indicating that Illinois Medicaid

---

[10]     Elsewhere, the ICSA defines "practitioner" to include a "pharmacist, . . . pharmacy, . . . or other person licensed, registered, or otherwise lawfully permitted . . . to . . . dispense . . . a controlled substance." 720 ILCS 570/102(kk). Relator alleges that Defendants' conduct also violates 720 ILCS 570/312(i-5), which states that "A prescriber may use a machine or electronic device to individually generate a printed prescription, but the prescriber is still required to affix his or her manual signature." Because this provision does not mention practitioners, much less pharmacists, the court concludes that (i-5) does not apply to them.

would not have paid Defendants' claims, had it known that Defendants violated the ICSA provision requiring manual signatures. The district court's reasoning in *Lisitza* is instructive:

> Undressed, the plaintiffs' argument is simply that the pharmacies never should have dispensed the subject drugs, and to the extent that they did, they were required to self-report regulatory violations so that Medicaid would not be misled into paying them. That argument is precluded by [case law] holding that violating underlying regulations (an "unauthorized billing") is not the equivalent of filing a false claim. Omitting information from the claim form about the course of events that led to the dispensing of a particular drug, . . . does not go to the truth or falsity of the representations on the claim form itself . . . , [and] undisclosed regulatory violations do not render those factual statements misleading.

*Lisitza*, 276 F. Supp. 3d at 800–01. Relator's complaint is lacking for the same reasons: even if Defendants' certifications qualify as "specific representations" of regulatory compliance, those representations do not amount to "misleading half-truths" establishing an inference that Illinois Medicaid would not have paid Defendants' claims.

Thus, the court determines that Relator has failed to establish false certification under either an express theory or an implied theory.

### b. Knowingly False Claims

Defendants argue that Relator has also failed to adequately plead that Defendants made any false statements with knowledge that they were false. Under 740 ILCS 175/3(b)(1)(A), "knowingly" "mean[s] that a person . . . (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." A plaintiff need not show "proof of specific intent to defraud," 740 ILCS 175/3(b)(1)(B), but the scienter requirement for false claims under the IFCA, like the FCA, is "rigorous." *Escobar*, 136 S. Ct. at 2002; *see Walgreen Co.*, 417 F. Supp. 3d at 1084 ("Courts evaluate IFCA claims under the same standards as those applicable to FCA claims.").

Relator argues that he has met that standard—that is, that he has sufficiently pleaded knowledge on behalf of Defendants—because it was "plainly obvious" that the prescription forms lacked valid signatures. (Pl.'s Resp. at 13.) Relator insists that it is not necessary to provide

more specific allegations at this stage because "this Court is capable of viewing the signatures and determining whether they were pre-signed and photocopied as [Relator] alleged." (*Id.*) Generally, a plaintiff need not attach evidence to a complaint to survive a motion to dismiss, but in this case, it is impossible for the court to verify Relator's characterization without examining the scanned prescription orders. In other words, without more, the court cannot determine whether Relator has made a factual allegation (that the forms were pre-signed and photocopied) or a legal conclusion (that the prescriptions are facially invalid).

Indeed, Defendants observe that the manner in which prescriptions for residents at long-term care facilities are filled casts doubt on Relator's insistence that pharmacists have the ability to determine whether prescribers have manually signed their orders. Unlike retail pharmacies, Omnicare receives electronic images of physicians' prescriptions, typically via fax. (Defs.' Mem. at 15).) Hence, "when an Omnicare pharmacist fills a prescription and confirms that appropriate documentation exists to dispense the drug, he or she typically sees the *faxed copy* of the prescription." (Defs.' Mem. at 15 (emphasis in original).) The four examples of allegedly false claims identified in the Complaint appear to confirm this: in each example, the prescription was transmitted to Defendants via fax. See Compl. ¶¶ 32–33, 45–46, 57–60, 71–72. This context undermines Relator's suggestion that Defendants' knowledge can be inferred simply from the appearance of the (faxed) signatures.[11]

---

[11]      Defendants also point out that a neighboring provision of the ICSA appears to carve out an exemption to the requirements of Section 112 for prescriptions delivered to patients in long-term care facilities. (Defs.' Mot. at 11 n.8; Defs.' Reply at 11 n.6) (citing 720 ILCS 570/313(b) ("Controlled substances that can lawfully be administered or dispensed directly to a patient in a long-term care facility licensed by the Department of Public Health . . . are exempt from the requirements of Section 312 . . . .")).) The provision directs, further, that prescriptions for Schedule II drugs "must be either . . . signed by the prescriber or . . . transmitted by the prescriber or prescriber's agent to the dispensing pharmacy *by facsimile.*" 720 ILCS 570/313(b) (emphasis added). This language suggests the ICSA contemplates that prescribers in long-term care facilities will simply fax a prescription to a pharmacy without a signature.

Because Relator has not alleged any basis for Defendants' knowledge other than "obviousness," the court concludes that he has not pleaded this element with particularity as required under Rule 9(b). *See United States ex rel. Schagrin v. LDR Indus., LLC*, No. 14 C 9125, 2018 WL 6064699, at *6 (N.D. Ill. Nov. 20, 2018) ("The Court questions whether the allegation of 'obviousness' is well-pled, since it requires the Court to draw an inference which . . . the Court does not have the expertise to make.").

### c. Materiality

The IFCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 740 ILCS 175/3(b)(4). Notably, a misrepresentation is not "material" merely because the government requires compliance with a statutory or regulatory requirement as a condition of paying a claim. *United States v. Molina Healthcare of Illinois, Inc.*, No. 17 C 6638, 2019 WL 3555336, at *3 (N.D. Ill. July 31, 2019) (citing *Escobar*, 136 S. Ct. at 2003). Rather, Relator "must allege that the violations at issue 'are so central . . . that the [government] would not have paid these claims had it known of these violations.'" *United States v. UnitedHealthcare Ins. Co.*, No. 15-CV-7137, 2018 WL 2933674, at *5 (N.D. Ill. June 12, 2018) (quoting *Escobar*, 136 S. Ct. at 2004).

Defendants argue that Relator has failed to plead facts showing that Illinois Medicaid staff would not have paid Omnicare's claims, had they known that the prescription orders lacked manual signatures. (Defs.' Mem. at 16–17; Defs.' Reply at 13.) The court agrees. Like the plaintiffs in *Molina Healthcare*, Relator's Complaint offers nothing more than "conclusory allegations that the government would have ceased payments." *Molina Healthcare*, 2019 WL 3555336, at *3. Although Relator uses the word "material" throughout the Complaint (*see, e.g.*, Compl. ¶¶ 19, 29, 93), he never connects it to factual allegations about how officials in the Illinois Medicaid program respond to orders that lack manual signatures.

26

In conclusion, because Relator has failed to plead falsity, knowledge, and materiality with particularity as required under Rule 9(b), the court dismisses Counts 2 and 3.

### 3. Unjust Enrichment (Count 4)

In his response brief, Relator concedes his unjust enrichment claim. (Pl.'s Resp. at 14.) Count 4 is dismissed. (*See* Compl. ¶¶ 95–98.)

### D. Dismissal of CVS Health Corp.

Finally, Defendants ask the court to dismiss CVS from this lawsuit because it was not the parent of Omnicare at the time of the alleged fraud. (*See* Defs.' Mem. at 18–19.) Relator acknowledges that CVS did not acquire Omnicare until August 2015 (Compl. ¶ 7), almost two years after the scheme ended. (*See* Compl. ¶¶ 18, 20, 27–30, 84, 87, 91, 96 (alleging that the fraud occurred between July 2011 and December 2013).) Moreover, the Complaint does not allege that CVS was affiliated with Omnicare during the time in question or otherwise took responsibility for the scheme after acquiring Omnicare. (Defs.' Mem. at 18–19 (citing *United States ex rel. Stop Mktg. Fraud, LLC v. Addus Homecare Corp.*, 2017 WL 467673, at *6 (N.D. Ill. Feb. 3, 2017) (dismissing relator's claims against defendant-parent company where the complaint alleged a fraud that ended before the parent acquired the subsidiary)).)

In response, Relator insists that CVS must remain in this lawsuit because he "has alleged that Defendants have continued their illegal practice in violation of Illinois statutory law and to their own unjust enrichment while CVS owned Omnicare, Inc." (Pl.'s Resp. at 14 (citing Compl. ¶ 3).) He argues that *Addus Homecare* is distinguishable because the alleged fraud in that case "virtually ceased" prior to the parent's acquisition of the subsidiary. (*Id.* at 15.) By contrast, here, "Defendants continued to illegally dispense controlled substances to long-term care facilities as a subsidiary of CVS just as before." (*Id.*) The basis for his assertion is unclear, however; the Complaint alleges only that Relator was "formerly employed" by Omnicare. (Compl. ¶ 7.)

27

From what the court can tell, Relator's argument for pursuing CVS in this lawsuit is limited to a single sentence in the Complaint: "Upon information and belief, the illegal misconduct complained of herein occurs nationwide in every OCR/CVS pharmacy facility every day." (Compl. ¶ 3.) This allegation—that the alleged scheme continued after Relator left his employment with Omnicare—is insufficient, absent any supporting facts, to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (holding that a complaint falls short "if it tenders naked assertions devoid of further factual enhancement") (internal quotation marks and citation omitted); *Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks and citations omitted). Because Relator has not satisfied Rule 12(b)(6)'s plausibility standard with respect to CVS, he has certainly not met Rule 9(b)'s particularity requirement. *See U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365 (7th Cir. 2016) ("Allegations based on 'information and belief' are insufficient in fraud cases, which require the plaintiff to state with particularity the circumstances constituting fraud.").

Because the Complaint does not plead specific facts tying CVS to the conduct at issue, the court dismisses CVS from this suit.

## CONCLUSION

For the foregoing reasons, the court grants Defendants' motion to dismiss Plaintiff's complaint [19]. Relator has leave to file an amended complaint, if he can do so consistent with Rule 11, no later than February 25, 2021.

ENTER:

Dated: January 29, 2021

REBECCA R. PALLMEYER
United States District Judge

28